FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 05, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

STEVEN L.,[1]

               Plaintiff,

       v.

ANDREW M. SAUL, the Commissioner of Social Security,

            Defendant.

No.    4:19-CV-5278-EFS

**ORDER DENYING PLAINTIFF'S SUMMARY-JUDGMENT MOTION AND GRANTING DEFENDANT'S SUMMARY-JUDGMENT MOTION**

Before the Court are the parties' cross summary-judgment motions.[2] Plaintiff Steven L. appeals the denial of benefits by the Administrative Law Judge (ALJ). He alleges the ALJ erred by 1) improperly weighing the medical opinions, 2) improperly determining that the impairments did not meet or equal a listing, 3) discounting Plaintiff's symptom reports, and 4) improperly assessing Plaintiff's residual functional capacity and therefore relying on an incomplete hypothetical at step five. In contrast, Defendant Commissioner of Social Security asks the Court to

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to him by first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] ECF Nos. 11 & 13.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court denies Plaintiff's Motion for Summary Judgment, ECF No. 11, and grants the Commissioner's Motion for Summary Judgment, ECF No. 13.

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[4] If the claimant is engaged in substantial gainful activity, benefits are denied.[5] If not, the disability-evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical or mental ability to do basic work activities.[7] If the claimant does not, benefits are denied.[8] If the claimant does, the disability-evaluation proceeds to step three.[9]

---

[3] 20 C.F.R. §§ 404.1520(a), 416.920(a).

[4] *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[5] *Id.* §§ 404.1520(b), 416.920(b).

[6] *Id.* §§ 404.1520(b), 416.920(b).

[7] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[8] *Id.* §§ 404.1520(c), 416.920(c).

[9] *Id.* §§ 404.1520(c), 416.920(c).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Step three compares the claimant's impairments to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[10] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work he performed in the past by determining the claimant's residual functional capacity (RFC).[12] If the claimant is able to perform prior work, benefits are denied.[13] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[14] If so, benefits are denied. If not, benefits are granted.[15]

---

[10] *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[11] *Id.* §§ 404.1520(d), 416.920(d).

[12] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[13] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[14] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[15] 20 C.F.R. §§ 404.1520(g), 416.920(g).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[16] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[17]

## II.   Factual and Procedural Summary

Plaintiff filed Title II and XVI applications, alleging a disability onset date of December 15, 2015.[18] His claim was denied initially and upon reconsideration.[19] A video administrative hearing was held before Administrative Law Judge Jesse Shumway.[20]

In denying Plaintiff's disability claims, the ALJ made the following findings:

- Plaintiff met the insured status requirements through June 30, 2021;

- Step one: Plaintiff had not engaged in substantial gainful activity since December 15, 2015, the alleged onset date;

- Step two: Plaintiff had the following medically determinable severe impairments: recurrent rotator cuff tear, status post-surgery; major depressive disorder; bipolar II disorder; anxiety disorder; attention

---

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[17] *Id.*

[18] AR 209-34.

[19] AR 142-56.

[20] AR 34-69.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

deficit hyperactivity disorder (ADHD); and specific learning disorders with impairment in math and written language;

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

- RFC: Plaintiff had the RFC to perform a full range of light work except:

  > he can never climb ladders, ropes, or scaffolds; he can only occasionally crawl; with his right upper extremity, he can seldom (10% of the workday) reach overhead; he can frequently reach in all other directions; he can frequently handle; he must avoid all exposure to hazards such as unprotected heights and moving mechanical parts; he can have only superficial interaction with the public; and he cannot do fast-paced work.

- Step four: Plaintiff was not capable of performing past relevant work; and

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as housekeeper/cleaner, cafeteria attendant, and food assembler.[21]

---

[21] AR 12-26. The ALJ also found that if Plaintiff was limited to simple, routine tasks with a reasoning level of two or less then he could perform the available jobs of housekeeper/cleaner, office helper, and courier. AR 26-27.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 5

When assessing the medical-opinion evidence, the ALJ gave:

- great weight to the examining opinion of James Opara, M.D. and the reviewing opinion of Howard Platter, M.D.;

- some weight to the testifying opinion of Donna Veraldi, Ph.D., the examining opinions of Kirk Holle, PT and Erin Darlington, Ph.D., and the reviewing opinions of Luci Carstens, Ph.D., Matthew Comrie, Psy.D., and John Wolfe, Ph.D.;

- little weight to the treating opinion of Karim Saleh, M.D. and the work-release statements; and

- no weight to Joseph Poston, ARNP's treating statement.[22]

The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[23] Likewise, the ALJ discounted the lay statements from Plaintiff's friend.[24]

---

[22] AR 22-25.

[23] AR 20-22.

[24] AR 25.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[25] Plaintiff timely appealed to this Court.

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[26] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[27] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[28] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[29] The Court considers the entire record as a whole.[30]

---

[25] AR 1-9.

[26] 42 U.S.C. § 405(g).

[27] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[28] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[29] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[30] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th

Further, the Court may not reverse an ALJ decision due to a harmless error.[31] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[32] The party appealing the ALJ's decision generally bears the burden of establishing harm.[33]

## IV.    Analysis

**A.    Medical Opinions: Plaintiff fails to establish error.**

Plaintiff challenges the ALJ's assignment of little weight to Dr. Saleh's opinion and some weight to Dr. Darlington's and Dr. Carstens' opinions. As discussed below, the Court finds Plaintiff fails to establish that the ALJ's weighing of the medical-opinion evidence was erroneous.

1.    <u>Standard</u>

The weighing of medical opinions is dependent upon the nature of the medical relationship, i.e., 1) a treating physician, 2) an examining physician who examines but did not treat the claimant, and 3) a reviewing physician who neither treated nor examined the claimant.[34] Generally, more weight is given to the

---

Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[31] *Molina*, 674 F.3d at 1111.

[32] *Id.* at 1115 (quotation and citation omitted).

[33] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

[34] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 8

opinion of a treating physician than to an examining physician's opinion and both treating and examining opinions are to be given more weight than the opinion of a reviewing physician.[35]

When a treating physician's or evaluating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and when it is contradicted, it may be rejected for "specific and legitimate reasons" supported by substantial evidence.[36] A reviewing physician's opinion may be rejected for specific and legitimate reasons supported by substantial evidence, and the opinion of an "other" medical source[37] may be rejected for specific and germane reasons supported by substantial evidence.[38] The

---

[35] *Id.*; *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

[36] *Lester*, 81 F.3d at 830.

[37] *See* 20 C.F.R. § 404.1502 (For claims filed before March 27, 2017, acceptable medical sources are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, qualified speech-language pathologists, licensed audiologists, licensed advanced practice registered nurses, and licensed physician assistants within their scope of practice—all other medical providers are "other" medical sources.).

[38] *Molina*, 674 F.3d at 1111; *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 9

opinion of a reviewing physician serves as substantial evidence if it is supported by other independent evidence in the record.[39]

2.    Dr. Karim Saleh, M.D.

Dr. Saleh treated Plaintiff and diagnosed Plaintiff with bipolar disorder hypomanic, ADHD, and anxiety. In July 2017, Dr. Saleh opined that Plaintiff was:

- moderately limited in his abilities to remember locations and work-like procedures, understand and remember very short and simple instructions, carry out very short instructions, interact appropriately with the general public, ask simple questions or request assistance, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, and be aware of normal hazards and take appropriate precautions;

- markedly limited in his abilities to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, make simple work-related decisions, accept instructions and respond appropriately to criticism from supervisors, and travel in unfamiliar places; and

---

[39] *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

- severely limited in his abilities to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others.[40]

As to the B criteria, Dr. Saleh found that Plaintiff had mild restrictions of activities of daily living and marked difficulties maintaining social functioning, concentration, persistence, and pace. Dr. Saleh also opined that Plaintiff would likely be off-task over thirty percent of the workweek and be absent four or more days per month.

The ALJ discounted Dr. Saleh's opined limitations because 1) Dr. Saleh failed to explain the basis for the extreme limitations, 2) they were not supported by the treatment records, which reflected improvement with medication, and 3) they were inconsistent with Plaintiff's reported activities.[41]

As to the ALJ's findings that Dr. Saleh's extreme check-box opinion was not explained and not supported by treatment notes, an ALJ may permissibly reject

---

[40] AR 668-71.

[41] AR 23.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

opinions that do not offer any explanation for their limitations.[42] However, if treatment notes are consistent with the opinion, a check-box opinion may not automatically be rejected.[43] Here, the ALJ found that the treatment records documented routinely normal mental status findings and that Plaintiff reported improvement with medication.[44] The ALJ cited to a January 2018 record wherein Plaintiff endorsed some situational anxiety but otherwise reported that he was doing well,[45] and a May 2018 record wherein it was noted that Plaintiff had responded well to medication.[46] The ALJ found that such generally unremarkable mental status findings were echoed throughout the treatment records.[47] Plaintiff argues the ALJ ignored ongoing, intermittent severe symptomology. However, the ALJ's interpretation of this record—that Plaintiff's mental health improved with treatment and when improved his limitations were not as severe as Dr. Saleh

---

[42] *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (recognizing that a medical opinion may be rejected if it is conclusory or inadequately supported); *Crane v. Shalala,* 76 F.3d 251, 253 (9th Cir. 1996).

[43] *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Garrison*, 759 F.3d at 1014.

[44] AR 23.

[45] *Id.* (citing AR 611-13).

[46] *Id.* (citing AR 642).

[47] *Id.* (citing AR 611-61).

opined—is a rational interpretation of the record and is supported by substantial evidence. For instance, out of the over thirty medical appointments that Plaintiff attended in 2017, most of the mental status observations were normal, although on two occasions Plaintiff appeared slightly depressed with fair insight or with a less-restricted affect and fair/good insight.[48] And the April 2018 medical record relied on by Plaintiff indicates that, although Plaintiff was observed with a depressed mood and a slightly constricted affect with fair insight and judgment, he was orientated with good recent and remote memory and attention and concentration, he was dressed in casual clothing with good grooming, hygiene, and eye contact, and with speech of a regular rate and rhythm.[49]

Lastly, the ALJ discounted Dr. Saleh's significant limitations because they were inconsistent with Plaintiff's own reported activities.[50] An ALJ may discount a medical opinion that is inconsistent with the claimant's level of activity, such as school.[51] However, many "activities are not easily transferable to what may be the more grueling environment of the workplace."[52] Here, the ALJ's finding is rational and supported by substantial evidence. Beyond merely engaging in daily care and

---

[48] AR 619-20 & 658-59.

[49] AR 623-24.

[50] AR 23.

[51] *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

[52] *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

living activities, Plaintiff was anticipated to participate in vocational training by attending college courses to study CAD drafting. Although Plaintiff was to be given accommodations at school, including two times more time to take tests and complete projects and allowed to take tests by himself, use a calculator during math tests and projects, and a scribe to assist with notetaking, there is no evidence that Plaintiff's mental-health care providers expressed any concern about Plaintiff's ability to meaningfully engage in vocational training due to his mental-health impairments.[53] On this record, the ALJ's finding that Plaintiff's reported activities were inconsistent with Dr. Saleh's significant limitations was a specific and legitimate finding, supported by substantial evidence to discount Dr. Saleh's opinion.

   3.   <u>Erin Darlington, Ph.D. and Luci Carstens, Ph.D.</u>

   In March 2016, Dr. Darlington conducted a psychological evaluation, without reviewing any records.[54] Based on Plaintiff's self-reports and an examination, Dr. Darlington diagnosed Plaintiff with bipolar 1 disorder and unspecified ADHD. Dr. Darlington opined that Plaintiff was moderately limited in his abilities to perform routine tasks without special supervision and perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision, and markedly limited in his

---

[53] *See, e.g.*, AR 582-86, 632, 635, & 655.

[54] AR 398-402.

abilities to understand, remember, and persist in tasks by following detailed instructions and complete a normal workday and workweek without interruptions from psychologically based symptoms. Otherwise, Dr. Darlington opined that Plaintiff's work activities were either not limited or only mildly limited. Overall, Dr. Darlington opined that Plaintiff's severity rating was moderate and he would likely be able to return to work after 3-6 months of treatment.

In April 2016, Dr. Carstens reviewed Dr. Darlington's opinion, along with Plaintiff's Tri-Cities Community Health March 18, 2016 medical record.[55] Dr. Carstens agreed with Dr. Darlington's diagnosis and limitations but opined that Plaintiff's limitations would last longer than twelve months.

The ALJ gave some weight to these opinions but discounted the marked limitations as not consistent with 1) the longitudinal record because Plaintiff was to engage in vocational rehabilitation, including attending college courses to obtain skilled level work in CAD drafting, and 2) Dr. Darlington's observations and findings.[56]

As to the first reason, as discussed above, the ALJ rationally found that the objective medical evidence and longitudinal record, including Plaintiff's plan to attend college courses to obtain skilled level work, were inconsistent with Dr. Darlington's and Dr. Carstens' marked limitations.

---

[55] AR 593-610.

[56] AR 24.

1

2

3        As to the ALJ's second reason (that Dr. Darlington's observations and

4   findings were inconsistent with the marked limitations), the ALJ rationally

5   interpreted the competing information in Dr. Darlington's report and the

6   remaining record. Although Dr. Darlington noted that Plaintiff "appeared to have a

7   hard time focusing on questions and with turn taking in the conversation," that he

8   "often interrupted the assessor" without appearing "aware of what he was doing,"

9   and that his memory was not within normal limits, Plaintiff otherwise was

10   observed as friendly and cooperative, motivated and high functioning, and within

11   normal limits for his speech, thought process, orientation, perception, fund of

12   knowledge, concentration, and abstract thought.[57] The ALJ rationally determined

13   that Dr. Darlington's noted observations, along with the longitudinal medical

14   record which reflected that Plaintiff's mental health symptoms improved with

15   subsequent treatment and medication management, did not support the marked

16   limitations as to understanding, remembering, and persisting in tasks by following

17   detailed instructions and completing a normal workday and work week without

18   interruptions from psychologically based symptoms, particularly because the RFC

19   limited Plaintiff to only superficial interaction with the public and no fast-paced

20   work.[58]

21   _____

22   [57] AR 400-03.

23   [58] *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (holding that
     an RFC adequately "captures restrictions related to concentration, persistence, or

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 16

1

2

Plaintiff fails to establish that the ALJ erred when weighing the medical opinions.

3

**B.    Step Three (Listings): Plaintiff fails to establish error.**

4

5

6

Plaintiff contends the ALJ erred by finding that Plaintiff's impairments did not meet or medically equal Listings 12.02, 12.04, 12.06, 12.11, and 1.02B, singly or in combination.[59]

7

8

9

10

pace where the assessment is consistent with restrictions identified in the" supported medical opinions).

11

12

[59] Plaintiff also mentions Listing 11.02 in passing: "Further Listings 1.02B, 11.02 are met when the fine and gross manipulation testing is considered." ECF No. 11 at 16; ECF No. 14 at 7-8. The reference to Listing 11.02 appears to be an erroneous addition as Listing 11.02 does not pertain to manipulation but rather to epilepsy, seizures, or migraine headaches. Because Plaintiff failed to support a Listing 11.02 argument with any evidentiary or legal support, a Listing 11.02 argument is waived. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 930 (9th Cir. 2003) ("We require contentions to be accompanied by reasons."); *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones."); *Carmickle v. Comm'r of Soc. Sec. Adm*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

13

14

15

16

17

18

19

20

21

22

23

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

       As to the mental-health listings, Listings 12.02, 12.04, 12.06, and 12.11, the ALJ's decision that Plaintiff did not establish that he satisfied these listings is rational. As discussed above, the longitudinal medical record reflected that Plaintiff's mental-health symptoms improved with treatment. Because the ALJ's decision that Plaintiff did not meet either Paragraph B or Paragraph C criteria was supported by substantial evidence, Plaintiff fails to establish error as to these listings.

       As to Listing 1.02B (major dysfunction of a joint), Plaintiff must establish a gross anatomical deformity involving one major peripheral joint in each upper extremity (i.e., shoulder) resulting in an inability to perform fine and gross movements effectively.[60] Plaintiff relies on his Purdue Pegboard test scores during his physical functional capacity evaluation in December 2017, when he scored in the first percentile for his right hand, both hands, left/right/both hands, and assembly, and in the fifth percentile for his left hand.[61] Plaintiff's argument presumes, without any citation to evidence interpreting Purdue Pegboard tests,

---

[60] 20 C.F.R. Pt. 404, Subpt. P, App 1 at 1.02. "Examples of the inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level." *Id.* at App 1 at 1.00.B.2.c.

[61] AR 672-90.

that the first and fifth percentiles are bad/limited scores, rather than good/functional scores. This presumption is contrary to the evaluator's finding that Plaintiff "had good use of both hands and was able to do fine manipulative tasks without difficulty."[62] The Purdue Pegboard tests thereby support the ALJ's finding that Plaintiff's right shoulder injury did not affect his fine movement skills. Moreover, during the Bennett Hand Tool Dexterity test Plaintiff "demonstrated the ability to use both hands while manipulating the wrenches and screwdrivers."[63] And during testing in July 2016, Plaintiff was found with full grip strength and normal range of motion in his elbows, wrists, thumbs, and fingers and no manipulative restrictions were recommended except for reaching due to the limited motion of the right shoulder joint.[64]

Plaintiff contends that the treatment notes show an inability to drive or lift and perform activities of daily living because of his right-shoulder limitations.[65] However, this cited treatment note from August 2016 was before Plaintiff's surgery in February 2017 and the December 2017 physical functional capacity evaluation, which reflected improvement to Plaintiff's shoulder and functional abilities.[66] And

---

[62] AR 677.

[63] *Id.*

[64] AR 414.

[65] AR 512-14.

[66] AR 672-91 & 861.

the medical recommendations that Plaintiff not return to work pertained to Plaintiff's ability to return to his prior pre-injury job—a job that the ALJ agreed Plaintiff could no longer perform due to his right-shoulder limitations.[67] On this record, the ALJ's finding that Plaintiff's right shoulder impairment did not meet or medically equal Listing 1.02B is a rational finding supported by substantial evidence. Moreover, the ALJ accounted for Plaintiff's right-shoulder limitations by crafting an RFC that restricted Plaintiff's overhead reaching with his right upper extremity to seldom (10% of the workday) and only frequent reaching in all other directions and frequent handling.[68]

The ALJ's finding that Plaintiff did not meet or medically equal any listing is rational and supported by substantial evidence

## C.    Plaintiff's Symptom Reports: Plaintiff fails to establish error.

Plaintiff argues the ALJ failed to provide valid reasons for rejecting his symptom reports. When examining a claimant's symptom reports, the ALJ must make a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[69] Second, "[i]f the claimant meets

---

[67] *See, e.g.*, AR 746, 748, & 751 ("As far as work, he is still not ready to return to work as a trucker.").

[68] AR 19.

[69] *Molina*, 674 F.3d at 1112.

the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[70] Here, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms inconsistent with the objective medical record, his contemporaneous statements to providers, and his daily activities.[71]

First, as to the ALJ's finding that Plaintiff's symptom reports were inconsistent with the objective medical evidence, symptom reports cannot be solely discounted on the grounds that they were not fully corroborated by the objective medical evidence.[72] However, objective medical evidence[73] is a relevant factor in considering the severity of the reported symptoms.[74] In contrast to Plaintiff's

---

[70] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

[71] AR 20-22.

[72] *See Rollins*, 261 F.3d at 857.

[73] "Objective medical evidence" means signs, laboratory findings, or both. 20 C.F.R. §§ 404.1502(f), 416.902(k). In turn, "signs" is defined as "one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [the claimant's] statements (symptoms)." *Id.* §§ 404.1502(g), 416.902(l); *see also* 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019).

[74] *Rollins*, 261 F.3d at 857.

reported disabling mental-health symptoms, the ALJ rationally found that Plaintiff routinely had normal mental status examinations, notwithstanding some depressed mood or situational anxiety and a documented incident of inappropriate interaction with medical staff.[75] In addition, the ALJ rationally found the medical record reflected that notwithstanding Plaintiff's right shoulder impairment, he was not as physically limited as he claimed but instead could perform light work with the identified postural and manipulative restrictions.[76] That the objective medical evidence revealed that Plaintiff's physical and mental impairments were not as limiting as Plaintiff claimed was a relevant factor for the ALJ to consider.

Second, the ALJ's finding that Plaintiff's contemporaneous symptom statements were inconsistent with his testified-to disabling symptoms was a rational finding supporting by substantial evidence.[77] The ALJ highlighted that Plaintiff's contemporaneous symptom reports indicated that he was doing generally well with treatment.[78] As to his right shoulder, Plaintiff reported improvement

---

[75] AR 22 (citing, e.g., AR 389-90, 395-96, 417, 452, 653, & 658).

[76] AR 22 (citing, e.g., AR 413, 522, 542, 765, 781, & 996).

[77] *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may consider "ordinary techniques of credibility evaluation," such as prior inconsistent statements concerning symptoms.).

[78] AR 20-21 (citing, e.g., AR 577 ("Patient is alert and orientated x4. He has a good recall and answers questions appropriately. He has good engagement with this

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

after the surgeries and physical therapy to his providers.[79] On this record, the ALJ rationally found that Plaintiff's right shoulder limitations were not as disabling as Plaintiff reported.[80] This was a clear and convincing reason to discount Plaintiff's reported disabling symptoms.[81]

Finally, the ALJ found that Plaintiff's activities, including living alone, making his own meals, doing minor household cleaning, going out alone, driving, shopping in stores, managing financial accounts, reading, socializing once a week,

---

therapist and his mood and affect were congruent, he is dressed and groomed appropriate."); AR 583 ("The patient is presented as casually dressed and adequately groomed. He made good eye contact. His speech was normal in rate and pattern aside from being slightly circumstantial. He appeared to be currently euthymic. . . . Recent and remote memory was grossly intact. Insight and judgment appeared to be adequate.")).

[79] *See, e.g.*, AR 765 ("He is seeing some continued improvement."); AR 747 ("He states he is seeing progress with this, but is not where he needs to be return to work. He reports that he has to be at 100 percent to return to work as a truck driver. Overall, however, he is pleased with his progress and feels he is making significant progress.").

[80] AR 21-22 (citing AR 747-48, 765, & 781).

[81] *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599–600 (9th Cir. 1999) (considering evidence of improvement).

going to friends' houses, working on cars, going to the library, going for walks, and returning to college for vocational training were inconsistent with his reported disabling symptoms.[82] In contrast, Plaintiff argues that he was unable to perform these activities well or at all when he was suffering a lengthy major depressive episode, which he had about three times a year. On this record, the ALJ rationally found that the medical evidence did not support a finding that Plaintiff's major depressive episodes were as extensive as Plaintiff claimed. This finding is supported by substantial evidence given the limited number of observed major depressive episodes by medical providers.

In summary, Plaintiff fails to establish the ALJ erred by discounting Plaintiff's symptom reports.

**D.    Step Five: Plaintiff fails to establish error.**

Plaintiff argues that the ALJ's hypothetical failed to consider the limitations set forth by his providers, particularly his absenteeism, off-taskness, unproductive time, and occasional handling and fingering. However, this argument merely restates Plaintiff's earlier allegations of error, which are not supported by the

---

[82] AR 21-22.

record. Accordingly, the ALJ's hypothetical properly accounted for the limitations supported by the record.[83]

### V.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **DENIED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

4.    The case shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order and provide copies to all counsel.

**DATED** this 5th day of October 2020.

s/Edward F. Shea

EDWARD F. SHEA
Senior United States District Judge

---

[83] *See Magallanes v. Bowen*, 881 F.2d 747, 756–57 (9th Cir. 1989) (holding it is proper for the ALJ to limit a hypothetical to those restrictions supported by substantial evidence in the record).